Paul MEYERS, Appellant–Petitioner,

v.

James MEYERS and Eva Meyers d/b/a J. Meyers, Construction, Inc., Appellees–Respondents.

No. 29A04–0412–CV–638.

Court of Appeals of Indiana.

April 26, 2006.

Daniel C. McCarthy, Greenwood, for Appellant.

Martin D. Allain, Fulk & Allain, Attorneys at Law, L.L.C., Indianapolis, for Appellees.

## OPINION

ROBB, Judge.

Paul Meyers ("Meyers") appeals the trial court's order granting James Meyers ("James") and Eva Meyers' ("Eva") d/b/a J. Meyers Construction, Inc. ("J. Meyers Construction") motion to dismiss his claim for retaliatory discharge and to dismiss James and Eva as defendants. We reverse and remand.

### Issues

Meyers raises two issues for our review, which we restate as follows:

1. Whether the trial court properly dismissed Meyers' claim for retaliatory discharge; and

2. Whether the trial court properly dismissed James and Eva Meyers as defendants.

### Facts and Procedural History

The facts, as related in Meyers' complaint, reveal that J. Meyers Construction is a corporation organized and existing under the laws of Indiana. Its principal place of business is in Westfield, Indiana, and its registered agent is James. James and Eva are the sole shareholders of J. Meyers Construction, the only members of its board of directors, and its only officers. Meyers alleges that J. Meyers Construction, James, and Eva are all "employers" as that term is defined in Indiana Code section 22-2-2-3,[1] and that he was employed by each of these parties.

While employed by J. Meyers Construction, James, and Eva, Meyers was required to work in excess of forty hours per week on numerous occasions, but was never given overtime pay. When Meyers complained to James and Eva about their failure to pay him overtime wages, they fired him.

On July 26, 2004, Meyers filed a complaint against J. Meyers Construction, James, and Eva in which he raised a claim for retaliatory discharge. Meyers also alleged that J. Meyers Construction, James, and Eva committed conversion by withholding $8,368.44 in taxes from his payroll checks for their own use instead of giving that money to the Internal Revenue Service. J. Meyers Construction, pursuant to Indiana Trial Rule 12(B)(6), filed a motion to dismiss Meyers' claim for retaliatory discharge for failure to state a claim upon which relief could be granted. The motion also argued that, pursuant to Indiana Trial Rules 12(B)(6) and 17, James and Eva should be dismissed as defendants because J. Meyers Construction was solely liable. On October 18, 2004, the trial court issued an order dismissing Meyers' claim for retaliatory discharge and dismissing James and Eva as defendants. This appeal ensued.

### Discussion and Decision

#### I. Standard of Review

Meyers appeals the trial court's dismissal, pursuant to Indiana Trial Rule

---

**1.** Indiana Code section 22-2-2-3 defines the term "employer" to mean "any individual, partnership, association, limited liability company, corporation, business trust, the state, or other governmental agency or political subdivision during any work week in which they have two (2) or more employees."

12(B)(6), of his retaliatory discharge claim and the dismissal of James and Eva as defendants. Our standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is *de novo*. *Cripe, Inc. v. Clark*, 834 N.E.2d 731, 733 (Ind.Ct.App.2005). A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *City of South Bend v. Century Indem. Co.*, 821 N.E.2d 5, 9 (Ind.Ct.App.2005), *trans. denied.* On review, we examine the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id.* "We stand in the shoes of the trial court and must determine if the trial court erred in its application of the law." *Id.* The trial court's grant of a motion to dismiss is proper only if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* "In making this determination, we look only to the complaint and may not resort to any other evidence in the record." *Id.*

## II. Retaliatory Discharge

Meyers first contends that the trial court erred in dismissing his retaliatory discharge claim. He points out that in his complaint he alleged that on several occasions he was required to work more than forty hours a week and was not given overtime pay. When he complained to James and Eva about their failure to pay his overtime wages, they fired him. Meyers asserts that he has a statutory right to overtime pay under Indiana Code section 22–2–2–4(j), which states that "no employer shall employ any employee for a workweek longer than forty (40) hours unless the employee receives compensation for employment in excess of the hours above specified at a rate not less than one and one-half (1.5) times the regular rate at which he is employed." Indiana Code section 22–2–2–9 states that any employer who violates the provisions of Indiana Code section 22–2–2–4 shall be liable to the employee affected in the amount of their unpaid wages. Meyers concludes that because he has a statutory right to overtime wages, and because he was terminated for exercising that right, he is entitled to bring a retaliatory discharge claim under the public policy exception to the employment-at-will doctrine established by our supreme court in *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973).

Initially, it is important to point out that Indiana follows the doctrine of employment-at-will. *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind.1996). Under this doctrine, an employer can discharge an at-will-employee for any cause or no cause at all without incurring liability. *Wilmington v. Harvest Ins. Companies*, 521 N.E.2d 953, 955 (Ind.Ct.App. 1988). "Absent a set term of employment, an employment relationship is at will." *McGarrity v. Berlin Metals, Inc.*, 774 N.E.2d 71, 76 (Ind.Ct.App.2002), *trans. denied.* Here, Meyers was an at-will-employee because his term of employment was of an indefinite duration.

However, our supreme court has recognized some exceptions to the employment-at-will doctrine. *Id.* In *Frampton*, our supreme court created a public policy exception to the employment-at-will doctrine when it held that an employee discharged for filing a worker's compensation claim could bring a claim for retaliatory discharge. 297 N.E.2d at 428. The court explained:

The [Worker's Compensation] Act creates a duty in the employer to compensate employees for work-related injuries

(through insurance) and a right in the employee to receive such compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

*Id.* at 427. The court concluded that although an at-will-employee may generally be discharged without cause, "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Id.* at 428.

This case is analogous to the situation presented in *Frampton*. In that case, an employee was fired for filing a worker's compensation claim. Here, Meyers was fired after he complained about not being paid overtime wages. Indiana Code sections 22-2-2-4(j) and—9 create a duty in the employer to compensate employees with overtime pay when they have worked more than forty hours in a week and afford employees a right to sue for unpaid overtime wages. Indiana Code section 22-2-2-11(b) imposes criminal sanctions upon employers who violate Indiana Code section 22-2-2-4.[2] These statutes indicate that there is a strong public policy in this state favoring the payment of overtime wages to employees who work more than forty hours per week. As the *Frampton*

court stated, in order for the public policy enunciated in Indiana Code sections 22-2-2-4(j) and -9 to be effectuated, "the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal." 297 N.E.2d at 427. If employers are permitted to penalize employees for filing suit to recover unpaid overtime wages, public policy will be undermined. As was the case in *Frampton*,

> [t]he fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

*Id.* The similarities between this case and *Frampton* suggest that an employee who has been fired for exercising his statutory right to overtime pay should be allowed to bring a claim for retaliatory discharge under the public policy exception to the employment-at-will doctrine created in *Frampton*.

However, this case is also similar to *Morgan Drive Away, Inc. v. Brant,* 489 N.E.2d 933 (Ind.1986). In that case, Brant transported mobile homes, pursuant to a series of equipment contracts, for Morgan. A dispute arose between Morgan and Brant when Morgan refused to pay Brant for certain services it determined Brant had performed unsatisfactorily. Brant filed a small claims action against Morgan demanding payment, and, a short time later, Morgan fired Brant. Brant then filed a retaliatory discharge claim against Morgan. A jury returned a verdict in favor of Brant, but made no determination as to whether Brant was an employee or an independent contractor.

**2.** An employer who violates Indiana Code section 22-2-2-4 commits a Class A infraction.

Morgan appealed, arguing that Indiana did not recognize a cause of action for the wrongful termination of an employee who has been fired in retaliation for filing a lawsuit for unpaid wages. We first noted that as an employee, Brant had a statutory right to sue Morgan for payment of his wages under Indiana Code section 22-2-4-4. *Morgan Drive Away, Inc. v. Brant,* 479 N.E.2d 1336, 1338 (Ind.Ct.App.1985), *trans. granted.* At that time, Indiana Code section 22-2-4-4 provided:

> Every corporation, company, association, firm or person who shall fail for ten (10) days after demand of payment has been made to pay employees for their labor, in conformity with the provisions of this act, shall be liable to such employee for the full value of his labor, to which shall be added a penalty of one dollar ($1.00) for each succeeding day, not exceeding double the amount of wages due, and a reasonable attorney's fee, to be recovered in a civil action and collectable without relief.[3]

We concluded that the "termination of Brant solely for filing the small claims action, would violate the *Frampton* rule if Brant were an employee as opposed to an independent contractor." *Brant,* 479 N.E.2d at 1338 (footnote omitted). Because the jury did not determine whether Brant was an employee or an independent contractor, we concluded that it was necessary to reverse and remand the case for a new trial. *Id.* at 1338–39.

On transfer, our supreme court vacated our opinion. *Brant,* 489 N.E.2d at 934. The court noted that "the Court of Appeals ... held that termination of an employee solely for filing an action for payment of wages pursuant to Ind.Code § 22-2-4-4 would violate the rule of *Frampton* ...."

*Id.* at 933. After discussing its decision in *Frampton,* the court stated that since *Frampton* "Indiana courts have refused to recognize retaliatory discharge actions in cases not involving workmen's compensation claims." *Id.* at 934 (citing *Campbell v. Eli Lilly & Co.,* 413 N.E.2d 1054 (Ind.Ct. App.1980), *trans. denied; McQueeney v. Glenn,* 400 N.E.2d 806 (Ind.Ct.App.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981); *Martin v. Platt,* 179 Ind.App. 688, 386 N.E.2d 1026 (1979)). The court concluded that

> [t]he employment at will doctrine has steadfastly been recognized and enforced as the public policy of this State. Revision or rejection of the doctrine is better left to the legislature. *We therefore decline this opportunity to extend Frampton to the facts of the instant case.*

*Id.* (Citations omitted and emphasis added). Noting that if Brant was an independent contractor he would be entitled to contract damages, the court remanded the case for a new trial. *Id.*

Although this case is similar to *Brant* in that Meyers is suing to recover unpaid wages and has a statutory right to sue for payment of those wages, *Brant* is distinguishable. The *Brant* court specifically stated that it only refused to extend *Frampton* to the facts of that case. The facts here are different from those in *Brant.* Here, Meyers is an employee, while it is not clear whether Brant was an employee or an independent contractor. Brant was only suing to recover unpaid wages, but Meyers is suing to recover unpaid overtime wages. Brant had a statutory right to sue for his unpaid wages under Indiana Code section 22-2-4-4, whereas Meyers has a statutory right to

3. In 1986, the statute was amended to substitute the word "chapter" for the word "act." The statute was again amended in 1993 to insert "limited liability company." Besides these two amendments, the statute remains the same today.

sue for his unpaid overtime wages under Indiana Code section 22–2–2–9. Based on these differences, we conclude that *Brant* is not controlling here.

■ J. Meyers Construction argues, as the *Brant* court pointed out, that the public policy exception created in *Frampton* is only available in cases involving workmen's compensation claims. The language in *Frampton*, though, indicates that our supreme court did not intend for its holding to be limited to cases involving workmen's compensation claims. The court first stated, "In summary, we hold that an employee who alleges he or she was retaliatorily discharged for filing a claim pursuant to the Indiana Workmen's Compensation Act or the Indiana Workmen's Occupational Diseases Act has stated a claim upon which relief can be granted." *Id.* at 428 (citations omitted). The court concluded that "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Id.* Based on this language, any employee who is fired for exercising a statutory right can bring a claim for retaliatory discharge, not just those employees who were fired for filing a workmen's compensation claim. To narrow the application of the *Frampton* exception to only those cases involving workmen's compensation claims would seem contrary to the holding in *Frampton*. We drew a similar conclusion in *Call v. Scott Brass, Inc.*, 553 N.E.2d 1225, 1228 (Ind.Ct.App.1990), *trans. denied*, where we stated, "Although the opinion of the Supreme Court in *Frampton* only addressed discharges in retaliation for the filing of a worker's compensation claim, the court did not hold that only employees discharged under the same circumstances could obtain relief."

Additionally, the courts of this state have steadily expanded the public policy exception to the employment-at-will doctrine created in *Frampton*. A few years after *Frampton*, we suggested that an employee could maintain an action for retaliatory discharge if he was terminated from his employment for exercising a statutory right or refusing to violate a statutory duty. *See Campbell*, 413 N.E.2d at 1061; *Martin*, 386 N.E.2d at 1028. The expansion of the public policy exception created in *Frampton* that was proposed in *Martin* and *Campbell* was confirmed in *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 393 (Ind.1988), where our supreme court held that not only could an employee bring a claim for retaliatory discharge if he was fired for exercising a statutory right, but he could also bring a claim for retaliatory discharge if he was terminated for performing a statutory duty. Building upon *McClanahan*, in *Call*, we held that an employee who was fired for complying with her statutory duty to appear for jury service could bring a claim for retaliatory discharge. 553 N.E.2d at 1230. *McClanahan* and *Call* indicate that since *Brant* Indiana courts have recognized retaliatory discharge actions in cases that do not involve workmen's compensation claims.[4]

---

4. Recently, in *M.C. Welding and Machining Co., Inc. v. Kotwa*, 845 N.E.2d 188, 196 (Ind. Ct.App., 2006), we affirmed a jury's verdict in a retaliatory discharge case. Kotwa alleged that "his termination was based upon his age, perceived disabilities, and the fact that he applied for unemployment benefits." *Id.* at 190. The jury entered a general verdict for Kotwa. On appeal, we first noted that al-

though it was questionable whether the trial court had jurisdiction over the age and disability discrimination claims, the general verdict was sustainable if there was sufficient evidence to support Kotwa's retaliatory discharge claim. *Id.* at 191. M.C. Welding argued that the evidence was insufficient to sustain a judgment for retaliatory discharge based upon our holding in *Lawson v. Haven*

■ Since *Frampton* and *McClanahan*, our supreme court has recognized a number of exceptions to the employment-at-will doctrine. Our supreme court has stated that if an employee can establish that "adequate independent consideration" supports his employment contract, the court will generally conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 718 (Ind.1997) (citing *Romack v. Public Serv. Co.*, 511 N.E.2d 1024, 1026 (Ind.1987) (adopting in substantial part and incorporating Judge Conover's dissent in *Romack v. Public Serv. Co.*, 499 N.E.2d 768, 777 (Ind.Ct.App.1986))). An employee may also avoid the harsh results of the employment-at-will doctrine by invoking the doctrine of promissory estoppel. *Orr*, 689 N.E.2d at 718. These cases suggest that the employment-at-will doctrine as been significantly eroded in Indiana.

In most of the cases where the courts of this state have refused to recognize a retaliatory discharge action, the basis for the court's refusal to recognize such a claim has not been the fact that the case did not involve a workmen's compensation claim, but that the plaintiff failed to identify a specific statute that served as the basis for a public policy that was violated. *See*

*Hamblen v. Danners, Inc.*, 478 N.E.2d 926, 929 (Ind.Ct.App.1985) ("In the absence of statutory directives, we decline to find a violation of public policy in the dismissal of an employee who refuses to take a polygraph examination."); *Rice v. Grant County Bd. of Comm'rs*, 472 N.E.2d 213, 215 (Ind.Ct.App.1984), *trans. denied* ("Although [plaintiff] alleges his conduct was reasonable under the Indiana general traffic statutes ... the general traffic laws do not confer a right or duty upon [plaintiff] to proceed outside the county line, to drive his truck in the mud, or to incur county expense for towing."); *Hillenbrand v. City of Evansville*, 457 N.E.2d 236, 237 (Ind.Ct.App.1983) (Plaintiff was fired because he saw something he was not supposed to see, not because he was carrying out his statutorily imposed duties); *Campbell*, 413 N.E.2d at 1061 ("[Plaintiff] has nowhere demonstrated a statutory source for the alleged right he claims to have exercised, nor has he demonstrated a statutory source for the duty he claims to have fulfilled."); *McQueeney*, 400 N.E.2d at 810 (rejected plaintiff's contention that termination of her employment because of her marriage constituted actionable retaliatory discharge); *Martin*, 386 N.E.2d at 1028 (denied an action for retaliatory discharge where terminated employees claimed that their discharge was in retaliation for hav-

*Hubbard Homes, Inc.*, 551 N.E.2d 855 (Ind.Ct. App.1990). In *Lawson*, an employee was fired for filing a claim for unemployment compensation. We affirmed the trial court's grant of summary judgment in favor of the employer on the employee's retaliatory discharge claim. *Id.* at 860. We noted that although the employee had a statutory right to file a claim for unemployment compensation, the employer's termination of the employee did not violate public policy. *Id.* However, we concluded that *Lawson* was factually distinguishable because, unlike in *Lawson*, Kotwa was only temporarily laid off from work. *Kotwa*, at 195. Even if *Lawson* was applicable, we concluded that M.C. Welding

waived any argument that *Lawson* prevents an employee from claiming retaliatory discharge after being terminated for applying for unemployment benefits because M.C. Welding never objected to the jury being instructed, contrary to the holding in *Lawson*, that an employer who retaliates against an employee who has filed for unemployment benefits commits unlawful retaliation. *Id.* at 195. *Kotwa* indicates, like *Call* and *McClanahan*, that Indiana courts have recognized retaliatory discharge actions in cases that do not involve workmen's compensation claims. It also suggests that the courts of this state are becoming more receptive to such actions allowing them to proceed to trial.

ing reported to a company official that their immediate superior had solicited and received illegal kickbacks and that the discharge was contrary to general public policy rather than a specific public policy enunciated in a statute). *But see Lawson*, 551 N.E.2d at 860 (noting that although plaintiff had a statutory right to file a claim for unemployment compensation and that plaintiff was fired for filing such claim, employer's actions did not violate public policy and court refused to recognize an exception to the employment-at-will doctrine under the facts of that case); *Brant*, 489 N.E.2d at 934 (plaintiff had a statutory right to file a claim for unpaid wages and was fired for filing such a claim, but court refused to extend *Frampton* to the facts of the case and concluded that plaintiff could not bring a claim for retaliatory discharge). Unlike these cases, Meyers had a statutory right to overtime pay, and he alleges that he was fired for exercising that right.

After considering the caselaw of this state since *Frampton*, the trend here seems to be an effort by the courts of this state to cautiously recognize statutory rights that provide protections to employees, while preserving employers' rights to run their businesses by upholding the basic tenants of the employment-at-will doctrine: an employee may be terminated for good reason or no reason at all so long as it does not violate a right protected by the Indiana Constitution or by a statute. *Brant* stands out because it goes against this trend. Therefore, we believe we are bound to follow our supreme court's holding in *Frampton*.

In *Frampton*, our supreme court held that an employee who was terminated for exercising a statutorily conferred right could bring a claim for retaliatory discharge. 297 N.E.2d at 428. Nothing in *Frampton* indicates that the public policy

exception created in that case is only available in cases involving workmen's compensation claims. Indiana Code sections 22–2–2–4(j) and –9 provide employees with a statutory right to overtime pay. These statutes express our state's public policy favoring the payment of overtime wages to employees who work more than forty hours per week. If we permit employers to fire employees who file suit to recover overtime pay, and prevent such employees from filing a claim for retaliatory discharge, then an employee's statutory right to overtime wages becomes a nullity. Employees will not file claims for justly deserved overtime compensation for fear that they will be fired from their job. This would effectively relieve employers of their obligation to pay overtime wages, which is contrary to public policy. Therefore, we conclude that an employee who has been fired for exercising his statutory right to overtime pay can bring a claim for retaliatory discharge under the public policy exception to the employment-at-will doctrine created in *Frampton*.

Here, Meyers alleges that on several occasions he worked more than forty hours a week and was not given overtime pay. When he asked James and Eva about their failure to pay him overtime wages, they fired him. Meyers alleged sufficient facts to state a claim for retaliatory discharge. The trial court erred in granting J. Meyers Construction's motion to dismiss Meyers' retaliatory discharge claim.

### III. Piercing the Corporate Veil

Meyers next argues that the trial court erred in dismissing James and Eva as defendants. The trial court dismissed James and Eva as defendants concluding that only J. Meyers Construction could be liable. Meyers contends that the corporate veil should be pierced, and James and

Eva should be held liable for the actions of J. Meyers Construction.

 In general, individual shareholders of a corporation are not personally responsible for the obligations of the corporation. *Escobedo v. BHM Health Assocs., Inc.*, 818 N.E.2d 930, 932 (Ind.2004). One of the fundamental principles of American corporate law is that corporate shareholders sustain liability for corporate acts only to the extent of their investment and are not held personally liable for acts attributable to the corporation. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994). The burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled, or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice. *Id.* In deciding whether a plaintiff has carried this burden of proof, we consider whether any evidence has been presented that shows: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Id.*

 In his complaint, Meyers alleged that James and Eva were the sole shareholders of J. Meyers Construction, the only members of its board of directors, and its only officers. None of these allegations alone would suggest that the corporate veil should be pierced. Another allegation made by Meyers was that J. Meyers Construction, James, and Eva are all employers as that term is defined in Indiana Code

section 22–2–2–3, and that he was employed by each of these defendants. This allegation suggests that Meyers may have been deceived about whom his employer actually was, and that James and Eva Meyers may have ignored the corporate form. These allegations, though, are not sufficient to justify piercing the corporate veil.

 Meyers makes two more significant allegations in his complaint. First, he alleged that on several occasions he worked more than forty hours in a week but was never paid overtime wages, as required by Indiana Code section 22–2–2–4(j). Indiana Code section 22–2–2–11(b) provides that an employer who violates Indiana Code section 22–2–2–4 commits a Class A infraction. Second, Meyers alleged that James and Eva committed conversion, a crime under Indiana Code section 35–43–4–3, when they retained $8,368.44 from his checks for their own use instead of giving this money to the Internal Revenue Service. These two allegations suggest that James and Eva used J. Meyers Construction to promote injustice or illegal activities. Therefore, Meyers has introduced sufficient evidence to survive J. Meyers Construction's motion to dismiss James and Eva as defendants. On remand, Meyers will bear the burden at an evidentiary hearing to prove that the corporate veil should be pierced, and that James and Eva should be held liable.

## Conclusion

 An employee who has been fired for exercising his statutory right to overtime pay can bring a claim for retaliatory discharge under the public policy exception to the employment-at-will doctrine created in *Frampton*. The trial court erred in granting J. Meyers Construction's motion to dismiss Meyers' retaliatory discharge claim because Meyers alleged sufficient

facts to support such a claim. The trial court also erred in granting J. Meyers Construction's motion to dismiss James and Eva as defendants because Meyers alleged sufficient facts to survive this motion. The trial court's order granting J. Meyers Construction's motion to dismiss is therefore reversed, and we remand for further proceedings.

Reversed and remanded.

MAY, J., concurs.

KIRSCH, C.J., concurs in part and dissents in part with separate opinion.

KIRSCH, Chief Judge, concurring in part and dissenting in part.

Our Supreme Court in *Morgan Drive Away, Inc. v. Brant*, 489 N.E.2d 933 (Ind. 1986) stated the "employment at will doctrine has steadfastly been recognized and enforced as the public policy of this State" and observed that the "[r]evision or rejection of the doctrine is better left to the legislature." *Id.* at 934. The Court declined the opportunity to extend the exception carved out in *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) to a claim for retaliatory discharge for filing a claim for unpaid wages. I am unable to draw meaningful distinctions between the facts before the Court in *Morgan Drive Away* and those presented here. Accordingly, I believe our decision, like that of the trial court, is controlled by that precedent. I respectfully dissent from the opinion of the majority and would affirm the trial court's dismissal of the plaintiff's retaliatory discharge claim.

On the issue of piercing the corporate veil, I concur with the decision of my colleagues.